UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| RAILROAD AVENUE PROPERTIES, LLC, <br> Plaintiff <br><br> v. <br><br> ACADIA INSURANCE COMPANY, <br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | C.A. NO. 19-40155-TSH |

**MEMORANDUM OF DECISION AND ORDER ON DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
SEPTEMBER 29, 2021**

**HILLMAN, D.J.**

**Introduction**

Railroad Avenue Properties, LLC ("Railroad Avenue") filed a single count suit against Acadia Insurance Company ("Acadia") for breach of contract. The dispute concerns the amount of insurance coverage available under a commercial property insurance policy (the "Policy") for damages sustained by a fire at 11 Railroad Avenue.[1] Acadia insured the property and adjusted and paid for damage arising out of the fire loss. Acadia argues that it has no obligation to pay Railroad Avenue for the difference between the replacement and actual cash value for any property loss or damage because the property was not repaired or replaced within two years after

---

[1] Acadia has been named a party as the purported issuer of an insurance policy to Plaintiff, Railroad Avenue Properties, LLC. The defendant notes that the Policy was issued not by Acadia but by Tri-State Insurance Company of Minnesota ("Tri-State"), but for clarity and continuity, the Court will refer to the defendant as Adacia.

the loss, as it set forth in the Policy. This Memorandum of Decision and Order addresses

Defendant's Motion for Summary Judgment (Docket No. 20). For the reasons set for the below,

that motion is granted.

## **Relevant Policy Provisions**

3. Replacement Cost

    c.    You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis. In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim for the additional coverage this Optional Coverage provides if you notify us of your intent to do so within 180 days after the loss or damage.

    d.    We will not pay on a replacement cost basis for any loss or damage:

        (1) Until the lost or damaged property is actually repaired or replaced; and

        (2) Unless the repair or replacement is made as soon as reasonably possible after the loss or damage.

The Policy further provides "Replacement Cost" as an "Optional Coverage." The Massachusetts Changes Endorsement, which is required by Massachusetts law (Mass. Gen. L. c. 175, § 47, c. 17) limits the availability of replacement cost coverage as follows:

    D.    Paragraph 3.d. of the Replacement Cost Optional Coverage is replaced by the following:

        d.    We will not pay on a replacement cost basis for any loss or damage:

            (1) Until the lost or damaged property is actually repaired or replaced:
                (a) On the described premises; or
                (b) At some other location in the Commonwealth of Massachusetts; and

            (2) Unless the repairs or replacement are made within a reasonable time, but no more than 2 years after the loss or damage.

The Advantage Property Endorsement, Form CL CP 04 58, provides that:

(b) We will not pay for the increased cost of construction under this coverage:

> (i) Until the property is actually repaired or replaced, at the same or another premises; and
>
> (ii) Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage, not to exceed two years.

The Advantage Property Endorsement, Form CL CP 04 58, provides for code upgrades to repair or reconstruct damaged or demolished buildings, sin the amount of $25,000

Ordinance or Law Coverage

The Policy contains the following provisions relevant to ordinance or law coverage:

Ordinance or Law coverage pays for:

> "[t]he increased cost to: Repair or reconstruct damaged portions of that Building . . . when the increased cost is a consequence of a requirement to comply with the minimum standards requirements of the ordinance or law."

Acadia will not pay for:

> "the increased cost of construction under this coverage: (i) Until the property is actually repaired or replaced, at the same or another premises; and (ii) Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage, not to exceed two years."

## **Findings of Fact**

Acadia issued a Businessowners Policy, No. ADV 5211789-11, effective February 26, 2017 to February 26, 2018, providing insurance coverage to Railroad Avenue in the event of various casualties, including loss due to fire. On November 18, 2017, the Property sustained severe damage from a fire. Given the extent of the damage, the building was determined to be a total loss and would require a rebuild.

Acadia was notified promptly. Christopher Redmond was the claims hander assigned to adjust the Fire Loss on behalf of Acadia. Acadia retained three consultants to assist its investigation of the Fire Loss: Simpson, Gumpertz & Heger ("SGH") conducted its site inspection on December 4, 2017 and provided services as an engineering consultant until

December 8, 2017; J.S. Held LLC conducted its site inspection on November 27, 2017 and provided services as a building loss estimator until February 2, 2018; and Steve Houghton of Fire Fact Investigations provided services as a fire cause and origin consultant during a site visit on November 20, 2017.

Acadia also investigated the potential for subrogation claims arising from the Loss. On December 4, 2017, Acadia determined that no viable subrogation claims existed because the Fire Loss was caused by an unidentified arsonist. On February 5, 2018, Acadia provided Railroad Avenue's public adjuster, John Sadick of Professional Loss Adjusters ("PLA"), with Acadia's estimate of the building loss. PLA agreed with the amount of Acadia's estimate but reserved the right to seek an additional $25,000 in ordinance or law coverage arising out of the anticipated need to install sprinklers when the building was rebuilt.

After the fire, Railroad hired a contractor, RGN Construction Management, LLC, ("RGN") to design and construct a replacement building. RGN prepared an initial cost spreadsheet for the reconstruction in January 2018, in the amount of $865,125. During the summer of 2018, Railroad Avenue demolished what remained of the fire-damaged property. Railroad Avenue began meeting with RGN regarding rebuild options, but did not seem to start in earnest, and did not sign a contract with RGN for architectural and structural design services until January 2019.

On February 22, 2018, Acadia received a Proof of Loss executed by Railroad Avenue. The Proof of Loss indicated that: (a) the Replacement Cost Value of Repair (excluding the potential $25,000 code claim) was $808,468.13; (b) the Actual Cash Value was $610,928.46; and, (c) after deducting the deductible amount ($10,000) and the advance payment ($25,000), the net Actual Cash Value was $575,539.67.

Acadia made the following payments to Railroad Properties:

- On December 11, 2017, Acadia made a $25,000 advance building loss payment to Railroad Avenue.

- On January 17, 2018, Acadia made a $9,000 payment to Railroad Avenue as payment for Railroad Avenue's lost rents claim.

- On February 26, 2018, Acadia paid the agreed-upon net Actual Cash Value of the Fire Loss, $575,928.46, to Railroad Avenue.

- On March 23, 2018, Acadia made a $9,000 payment to Railroad Avenue as additional payment for Railroad Avenue's lost rents claim.

- On April 12, 2018, Acadia made a $4,250 payment to Railroad Avenue as reimbursement for a consultant retained by Railroad Avenue.

Christopher Redmond inspected the Property on September 27, 2018. Redmond observed that the subject building had been razed, all debris had been removed from the premises, but there was no indication that any reconstruction had begun. Railroad Avenue requested a six-month extension on November 5, 2019, about two weeks before the two-year anniversary of the fire, stating that construction would done in four months. Acadia did not grant an extension to the two-year rebuild requirement under the Policy.

## **Legal Standard**

In deciding a case on summary judgment, the Court views the facts in the light most favorable to the non-moving party and makes all reasonable inferences in that party's favor. *O'Connor v. Steeves*, 994 F.2d 905, 907 (1st Cir. 1993). Summary judgment is appropriate when no genuine issue exists as to any material fact, and the moving party is entitled to judgment as a matter of law. *Eli Lilly & Co. v. Barr Labs., Inc.*, 251 F.3d 955, 962 (Fed. Cir. 2001).

The moving party is responsible for "identifying those portions [of the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*,

477 U.S. 317, 323, 106 S.Ct. 2548 (1986). It can meet its burden either by "offering evidence to disprove an element of the plaintiff's case or by demonstrating an "absence of evidence to support the nonmoving party's case.'" *Rakes v. United States*, 352 F.Supp.2d 47, 52 (D.Mass. 2005), *aff'd*, 442 F.3d 7 (1st Cir. 2006) (*quoting Celotex*, 477 U.S. at 325). Once the moving party shows the absence of any disputed material fact, the burden shifts to the non-moving party to place at least one material fact into dispute. *Mendes v. Medtronic, Inc.*, 18 F.3d 13, 15 (1st Cir. 1994) (*citing Celotex*, at 325). When ruling on a motion for summary judgment, "the court must view the facts in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." Scanlon v. Dep't of Army, 277 F.3d 598, 600 (1st Cir. 2002).

Under Massachusetts law, the interpretation of an insurance contract is a question of law. *See Boston Gas Co. v. Century Indem. Co.*, 454 Mass. 337, 355 (2009). Courts are required to apply general contract-interpretation principles and construe "the words of the policy in their usual and ordinary sense." *Dorchester Mutual Ins. Co. v. Krusell*, 485 Mass. 431, 437 (2020) (quoting Metropolitan Life Ins. Co. v. Cotter, 464 Mass. 623, 634-35 (2013)). "Every word in an insurance contract must be presumed to have been employed with a purpose and must be given meaning and effect whenever practicable . . . without according undue emphasis to any particular part over another." *Boston Gas Co.*, 454 Mass. at 355-56 (internal quotation marks and citations omitted). When in doubt, a court must consider "what an objectively reasonable insured, reading the relevant policy language, would expect to be covered." *Id*. at 356 (*quoting A.W. Chesterton Co. v. Massachusetts Insurers Insolvency Fund*, 445 Mass. 502, 518 (2005)).

"The insurer bears the burden of demonstrating that an exclusion exists that precludes coverage, and 'any ambiguities in the exclusion provision are strictly construed against the insurer'. Ambiguity does not exist simply because the parties disagree about the proper

6

interpretation of a policy provision; rather, '[a]mbiguity exists when the policy language is susceptible to more than one rationale interpretation'" *Valley Forge*, 670 F.3d at -- (internal citations and citation to quoted case omitted). Doubts created by any ambiguous words or provisions are to be resolved against the insurer. *August A. Busch & Co. of Mass., Inc. v. Liberty Mut. Ins. Co.*, 339 Mass. 239, 243, 158 N.E.2d 351,354 (1959).

## Discussion

Railroad Avenue claims that it was entitled to the replacement cost to repair and/or replace the Property and seeks to recover the difference between the replacement cost and the ACV. Railroad Avenue also asserts that it is entitled to payment under the Ordinance or Law provision of the Policy which entitles it to recover increased costs incurred in connection with the repair and replacement of damaged property to bring the repaired/replaced property into minimum compliance with building, zoning or land use ordinance or law (here, a sprinkler system).

Acadia contends that the clear and unambiguous language of the Policy provides that the Railroad Avenue is not entitled to replacement cost or ordinance cost unless the damaged property is repaired or replaced within two years of the date of loss. Because it is undisputed that Railroad Avenue did not repair or replace the Property within two years of the date of loss, Acadia argues that Railroad Avenue was not entitled to recover replacement cost or ordnance cost. I agree with Acadia. The plain language in the Policy provides that Railroad Avenue is not entitled to recover replacement or ordinance cost under the Policy until the damaged property is actually repaired or replaced. Moreover, such repairs or replacement were to be made as soon as reasonably possible and *must* have been completed within two years of the date of loss. In *Shri Gayatri v. LLC v. Charter Oak Fire Insurance Co.*, 206 F.Supp.3d 684, 696-697 (D.Mass. 2016),

this Court held that the insured was not entitled to recover replacement cost or ordinance coverage because the insured did not repair or replace the property within the requisite two-year period. This Court explained:

> The requirement that the damaged property be repaired or replaced is a condition precedent to the insured being entitled to replacement cost and ordinance cost proceeds. That is, the insurer is not liable to pay either replacement or ordinance unless and until the insured has met all necessary conditions, i.e., repaired or replaced the damaged property. If the time by which the condition must be fulfilled ends the condition remains unsatisfied, the obligor's duty is discharged unless the obligor excuses fulfillment of the condition.

*Shri Gayatri*, 206 F.Supp.3d at 697.

On or about February 15, 2018, Railroad Avenue executed a Proof of Loss indicating that the net actual cash value was $575,928.46. On February 26, 2018, Acadia made a $575,928.46 payment to Railroad Avenue. Thus, Acadia paid Railroad Avenue the full actual cash value amount of the Loss within about three months of the fire. With respect to the Replacement Cost Value, the Proof of Loss provided that any "Supplemental Claim to be filed in accordance with the terms and conditions of the Replacement Cost Coverage within 2-years from the date of loss as shown above [November 18, 2017], will not exceed . . . $197,539.67." Therefore replacement cost coverage is not triggered until the damaged property has actually been "repaired or replaced" by Railroad Avenue, and is only available if Railroad Avenue makes such repairs or replacement "within a reasonable time, but no more than 2 years after the loss or damage."

Railroad Avenue argues that the terms "until the property is actually repaired or replaced" and "unless the repairs or replacement are made as soon as reasonably possible after the loss or damage, not to exceed two years" are ambiguous and should be construed against Acadia. Railroad Avenue argues that the condition was satisfied because it *intended* to rebuild,

was in the process of rebuilding, others caused delays, and because it had executed construction contracts within two years of the loss.

Railroad Avenue also claims that it was unable repair and/or replace the Property within two years of the date of the loss because of the actions or inactions of Acadia and others and therefore, Acadia is "estopped" from denying coverage for replacement cost and/or ordinance cost. More specifically, Railroad Avenue argues that it was unable to timely repair and/or replace the Property because Acadia hired forensic investigators to determine the cause of the loss, thereby delaying the demolition. The tenant in the fire-damaged building, Phoenix Expo, and its insurer, Nautilus, further delayed the demolition, by demanding their right to investigate the fire scene and retrieve any of their lost or damaged equipment and/or property. Railroad Avenue blames additional delays on "constructions issues with the Town, engineering and architectural issues, permit issues, construction and fabrication lead time, National Grid and COVID-19." Essentially, Railroad Avenue claims that Acadia should be estopped from relying on the two-year repair limitation.

Before discussing the merits of Railroad Avenue's claim, the Court must first examine whether Railroad Avenue's reliance on an estoppel theory is legally sound. *See Shri Gayatri*, 206 F.Supp.3d 684 at 697. The requirement that the damaged property be repaired or replaced is a condition precedent to the insured being entitled to replacement cost and ordinance cost proceeds. That is, the insurer is not liable to pay either replacement or ordinance unless and until the insured has met all necessary conditions, *i.e.*, repaired or replaced the damaged property. If the time by which the condition must be fulfilled ends, the condition remains unsatisfied and the obligor's duty is discharged *unless* the obligor excuses fulfillment of the condition. The record

evidence does support a finding that Acadia waived the condition that repair or replacement be completed within two years of the Loss.

Accordingly, performance of the condition precedent was not excused. Therefore, Railroad Avenue is left to argue that Acadia breached its obligations under the Policy and prevented the condition precedent from being met. Moreover, the burden of proof is on Railroad Avenue to establish that Acadia prevented it from complying with the condition that that the damaged Property be repaired and replaced within two years of the Loss.

Railroad Avenue essentially asserts that it was unable to timely complete the repairs and restoration of the Property because of delays caused by Acadia, its tenants and countless other entities and issues. The record, however, does not substantiate Railroad Avenue's assertions. When viewing this evidence in the light most favorable to Railroad Properties, it has failed to meet its burden of establishing that there is a genuine issue of fact as to whether Acadia prevented it from satisfying the condition that it timely repair and replace the damaged Property. On the contrary, the undisputed evidence establishes that Acadia acted promptly in investigating the loss, providing its estimate and paying the claim.

Accordingly, summary judgment shall enter for Acadia.

## Conclusion

Defendant's Motion for Summary Judgment (Docket No. 20) is hereby ***granted***. Judgment shall enter against the Plaintiff, Railroad Avenue Properties, LLC, on its claim against Defendant.

      **/s/ Timothy S. Hillman**
      TIMOTHY S. HILLMAN
      UNITED STATES DISTRICT JUDGE